*In re* TARUS MARK STOKES, a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* TARUS MARK STOKES, Respondent-Appellant.)

First District (1st Division)   No. 80—2178

Opinion filed August 16, 1982.

James J. Doherty, Public Defender, of Chicago (Donald S. Honchell, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Kevin Sweeney, and Kim R. Kardas, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McGLOON delivered the opinion of the court:

Respondent was charged by separate juvenile petitions with two counts of burglary. After a jury trial, respondent was acquitted of one charge and found delinquent on the second. He was adjudicated a ward of the court and committed to the Illinois Department of Correc-

tions under the habitual juvenile offender act (Ill. Rev. Stat. 1981, ch. 37, par. 705—12).

On appeal, respondent contends that (1) the order of commitment is void because the State failed to prove notice to respondent's father; (2) the two offenses were improperly joined for trial; (3) there was no proof of entry into a building and therefore he was not proved guilty of burglary beyond a reasonable doubt; and (4) sentencing under the habitual juvenile offender act was improper where the State failed to prove prior adjudications of wardship.

We affirm.

Respondent was charged with the burglaries of the Fleming residence at 10948 S. Wallace and the Snow residence at 11043 S. Peoria. The trial court allowed both offenses to be joined for trial before a jury. The evidence produced is as follows.

Mrs. Sandra Fleming testified that she left for work at 8 a.m. on March 4, 1980. In the early afternoon, she received a call from her neighbor and returned home. When she entered her home, she found the kitchen cabinets open and a basement window forced off the hinges. Later that day, Mrs. Fleming went to the police station where Officer Murphy returned a radio which had been removed from Fleming's home.

Ethel Page, a neighbor of the Flemings, testified that at 11:45 on the morning in question, she saw respondent crawling from a basement window in the Fleming residence. When Mrs. Page tapped on her window, respondent and another youth fled. Neither boy was carrying any property.

Officer Catherine Murphy testified that she received a radio message at 12:30 on the day in question and proceeded to the Snow residence. She spoke to a woman and went to the rear of the building where she saw respondent running up a stairwell leading from the basement. The basement door was open. Respondent ran past Officer Murphy toward the alley. At the bottom of the stairwell, Murphy found a stereo speaker and a large green garbage bag containing several items. Murphy also observed that the side molding adjacent to the basement door lock had been removed.

Murphy radioed a description of the offender to responding units. Five minutes later, she saw respondent in the custody of Officers Ciraulo and Skerrett. Murphy and Ciraulo entered the basement and saw a boy running up the stairs. This boy and another were arrested in the home. Murphy further testified that property in the bag was returned to Mrs. Snow and Mrs. Fleming.

Officer Skerrett testified that at 12:30 p.m. on March 4, 1980, he

responded to a burglary in progress call. Officers Ciraulo and Solana were also in the squad. Skerrett drove to an alley behind 11043 S. Peoria street. He and Ciraulo walked down the alley and Solana went to assist Officer Murphy. Skerrett saw the respondent cross the street and pursued him. He found respondent crouching in a gangway near a garage. Respondent was wearing a blue pea coat and a dark cap. Skerrett took respondent to the Snow residence where Officer Murphy identified respondent. Anthony Maxie and Christopher Marsh were also taken into custody. Skerrett brought respondent and Maxie to the Fleming residence where Mrs. Page identified them as the persons who had entered the Fleming home.

The parties stipulated that if Anthony Maxie were called by defendant to testify, he would state that he did not see respondent on the day in question until they were both in custody and that he had no knowledge of respondent's involvement in the burglaries. Respondent testified that he saw Christopher Marsh at the police station. Marsh was wearing a blue coat and green hat.

The jury returned a verdict of delinquent on the charge of burglary of the Snow residence. Respondent was found not delinquent on the charge of burglary of the Fleming residence. Respondent was sentenced under the habitual juvenile offender act (Ill. Rev. Stat. 1981, ch. 37, par. 705–12) and committed to the Department of Corrections until his 21st birthday.

First, respondent contends that the order of commitment is void because the State failed to notify respondent's father. The petition for adjudication of wardship stated that respondent's father's address was unknown. Respondent therefore maintains that the State was required to serve his father by publication and its failure to do so deprived the court of jurisdiction.

■■ Initially, we note that respondent's mother was the custodial parent. She had actual notice of the proceedings, was present during the hearings on the charges, and testified on behalf of respondent. On the other hand, respondent's father apparently had little contact with his son. Under these facts, respondent's father should not be treated as an indispensable party and his absence does not deprive the minor of substantial protection or assistance. (*In re J.W.* (1981), 87 Ill. 2d 56, 429 N.E.2d 501.) In fact, service by publication on respondent's father was unnecessary where the custodial parent was present and no judgment or order was entered against the father. (*People v. Rollins* (1980), 86 Ill. App. 3d 245, 407 N.E.2d 1143.) We therefore find that the order of commitment was not void.

Second, defendant maintains that the two offenses were improp-

erly joined for trial where the offenses were distinct and unrelated.

■ Separately charged offenses may be joined for a jury trial where it appears that the offenses were part of the same comprehensive transaction or scheme. (*People v. Henderson* (1976), 36 Ill. App. 3d 355, 344 N.E.2d 239.) Whether offenses should be joined for a single prosecution is a matter for the discretion of the trial court. *People v. Higgins* (1979), 71 Ill. App. 3d 912, 390 N.E.2d 340; *People v. Olson* (1978), 59 Ill. App. 3d 643, 375 N.E.2d 533.

■ In this case, the crimes occurred approximately one-half hour apart. The homes in which the crimes occurred were only a few blocks apart. The bag abandoned by respondent in the stairwell of the Snow residence contained the proceeds of both burglaries. Considering all these facts, the trial court could have reasonably concluded that the offenses were part of a comprehensive scheme. We therefore find no abuse of discretion.

■ ■ Third, respondent maintains that his presence in the stairwell did not constitute an entry of a building or part thereof and therefore he was not proved guilty of burglary beyond a reasonable doubt. Respondent, however, raises no issues regarding authority to enter or proof of intent.

The Criminal Code of 1961 defines burglary as follows:

> "A person commits burglary when without authority he knowingly enters *** a building *** or any part thereof, with intent to commit therein a felony or theft." (Ill. Rev. Stat. 1981, ch. 38, par. 19—1(a).)

The element of the offense may be proved by circumstantial evidence and inferences drawn therefrom. (*People v. Earl* (1980), 89 Ill. App. 3d 980, 412 N.E.2d 645; *People v. Cokley* (1977), 45 Ill. App. 3d 888, 360 N.E.2d 545.) The circumstantial evidence must be sufficient to convince the trier of fact of defendant's guilt beyond a reasonable doubt and to a moral certainty. (*People v. Foster* (1979), 76 Ill. 2d 365, 392 N.E.2d 6; *People v. Morton* (1981), 95 Ill. App. 3d 280, 419 N.E.2d 1276.) Flight from the scene of a crime may also be considered with other evidence of guilt. *Cokley,* citing *People v. Watson* (1975), 28 Ill. App. 3d 786, 329 N.E.2d 512.

In *Cokley,* defendants were seen in the yard of the liquor store building and fled when police approached. Defendants were not seen inside the building. Several empty boxes were scattered outside. The back door of the store had been broken and inventory was missing. The appellate court found that the circumstantial evidence was sufficient to prove defendants' presence at the scene of the crime.

■ Similarly, we find that the requisite element of entry was

proved in this case. The Snow resident had been forcibly entered. Defendant fled up the basement steps when Officer Murphy arrived. A bag containing the proceeds of the burglary was found in the stairwell from which defendant fled. We find that sufficient evidence from which the jury could conclude that respondent entered the dwelling was presented. Because of our decision, we need not address the specific point raised by respondent.

█ Fourth, respondent contends the trial court erred in sentencing him under the habitual juvenile offender act (Ill. Rev. Stat. 1981, ch. 37, par. 705—12). Respondent admits that he was twice found delinquent on charges which would have been felonies had he been tried as an adult. However, he argues that sentencing under the act requires proof of not only prior findings of delinquency but also of prior adjudication of wardship on the findings. He concludes that the State's failure to prove wardship precludes sentencing under the act.

Delinquency and wardship are distinct concepts. A delinquent minor is defined as "any minor who prior to his 17th birthday has violated *** any federal or state law or municipal ordinance ***." (Ill. Rev. Stat. 1981, ch. 37, par. 702—2.) An adjudication of wardship follows only if the court finds such an adjudication to be in the best interest of the minor and the public. (*In re J.R.* (1980), 82 Ill. App. 3d 714, 403 N.E.2d 114.) Thus, wardship does not automatically arise from a finding of delinquency. *In re Beasley* (1977), 66 Ill. 2d 385, 362 N.E.2d 1024, *cert. denied* (1978), 434 U.S. 1016, 54 L. Ed. 2d 761, 98 S. Ct. 734; *People v. T. H.* (1979), 70 Ill. App. 3d 522, 388 N.E.2d 862.

The habitual juvenile offender act provides in part:

"Any minor having been twice adjudicated a delinquent minor *** and who is thereafter adjudicated a delinquent minor for a third time shall be adjudged an Habitual Juvenile Offender ***." (Ill. Rev. Stat. 1981, ch. 37, par. 705—12.)

This act requires only prior adjudication of delinquency. There is no express requirement that the minor must have been adjudged a ward of the court in order for the act to apply. We therefore disagree with respondent's assertion that proof of wardship was required for sentencing under the act and find no error by the trial court.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

CAMPBELL, P. J., and O'CONNOR, J., concur.